# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **THOMAS H. PHILLIPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action Number |
| **v.** | ) | **2:18-cv-359-AKK** |
| | ) | |
| **MINDRAY DS USA, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Thomas H. Phillips asserts claims against his former employer, Mindray DS USA, Inc., for purported violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and Alabama state law.[1]  Doc. 1.  Allegedly, Mindray discriminated against Phillips by subjecting him to a hostile work environment and placing him on an unreasonable performance improvement plan, and discriminated and retaliated against him when he complained about the alleged discrimination by discharging him.  Mindray moves for summary judgment on all claims, arguing that Phillips cannot establish his claims or show that its proffered reasons for the discharge are pretextual.  Docs. 23; 25.  For the reasons discussed

---

[1] The Complaint also pleads claims for discrimination and harassment based on alleged violations of the Americans with Disabilities Act.  Doc. 1 at 16-21.  However, Phillips voluntarily dismissed his ADA claims in his response to Mindray's motion for summary judgment.  Doc. 30 at 17, n.6.  Because "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), the ADA claims are due to be dismissed with prejudice.

below, Mindray's motion is due to be granted as to the hostile work environment and state law claims. But, because a question of fact exists regarding whether Mindray's reason for discharging Phillips is pretextual, the motion is due to be denied as to the discriminatory discharge and retaliation claims.

## I.    STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of informing the court of the basis of the motion and proving the absence of a genuine dispute of material fact. *Id.* at 323. If the moving party meets that burden, the burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.     FACTUAL BACKGROUND

### A.     <u>Phillips' Relevant Work History at Mindray</u>

Mindray sells patient monitoring and anesthesia machines to hospitals and medical clinics. Doc. 24-1 at 4. Phillips worked as a sales manager for Mindray's anesthesia, or perioperative, division from 2009 until his discharge in July 2017 at the age of 62. Doc. 24-3 at 9, 15. As a sales manager, Phillips' responsibilities included working with "sales teams to meet and exceed sales quotas" for the number of anesthesia machines sold in his region. Doc. 24-4 at 2. To accomplish that goal, Phillips found potential leads for new customers "when [he] could," but he primarily relied on sales representatives in his region to find potential leads and sales

opportunities. Doc. 24-3 at 21-22.[2] Phillips then helped the representatives with their initial contact with prospective customers, and he also conducted training for customers and clinical trials in which a hospital or surgical center could try out Mindray's anesthesia system. Docs. 24-3 at 9, 18, 23; 24-4 at 2. But, as a sales manager, Phillips did not supervise or manage the sales representatives, who like Phillips, reported to a regional manager. Docs. 24-2 at 42; 24-3 at 9; 24-4 at 3.

Phillips transferred to Mindray's South Central Region in 2015, where he reported to Mike Hackert, the regional manager. Doc. 24-3 at 21, 24. According to Phillips, Hackert, who was in his sixties, marginalized Phillips by focusing on the sales of patient monitoring devices, and by not inviting Phillips to participate in conference calls and meetings with sales representatives in the region. Doc. 24-3 at 8. The marginalization continued even after Hackert retired in January 2016. *Id.* at 6-8. Phillips contends that "the culture didn't change" with Mike Lessick, Hackert's replacement, and that Lessick also focused on the sales of patient monitoring machines. *Id.* at 8, 11. In addition, Lessick did not invite Phillips to regional sales meetings until August 2016. *Id.*

For 2016, Mindray set Phillips' sales goal at approximately twenty anesthesia machines per quarter, or eighty-five machines for the year. Docs. 24-3 at 25; 24-6

---

[2] The sales representatives were responsible for selling patient monitoring and anesthesia machines, and their sales goals were defined by dollar amounts rather than the number or type of machines sold. Doc. 24-3 at 11.

at 2; 24-12 at 2; 32-1 at 2. Sales were down for the South Central Region in 2016, and the Region sold only forty anesthesia machines that year—less than half of Phillips' goal. Docs. 24-3 at 27-28; 24-6 at 2; 24-12 at 2; 32-1 at 2. The South Central Region sold the fewest number of anesthesia machines company-wide in 2016, amounting to about $444,000 less in sales than the next closest region. Docs. 34-3 at 34. Consequently, Lessick told Phillips that they needed to work to develop the sales representatives to do a better job. Doc. 24-3 at 27-28. According to Phillips, it was unfair for Lessick to hold him responsible for the poor sales numbers because no one in Mindray's upper management who had authority over the sales representatives, including Lessick, encouraged them to promote the anesthesia machine sales, and the sales representatives emphasized selling patient monitoring devices over the anesthesia machines. Doc. 24-3 at 9, 14.

For 2017, Mindray set Phillips a goal to sell eighty-six anesthesia machines, or about twenty machines per quarter. Doc. 24-7 at 2. But, in the first quarter of 2017, the South Central Region sold only six machines. Docs. 24-6 at 2; 24-8 at 2; 24-12 at 2. Based on the poor results, Lessick placed Phillips on a performance improvement plan (PIP) on April 24, 2017. Docs. 24-3 at 28; 24-12 at 2. The PIP noted that Phillips had not met his sales goals for any quarter of 2016 or the first quarter of 2017. Doc. 24-12 at 2. Under the PIP, one of Phillips' immediate objectives was to "Book and Ship," i.e., sell, twenty anesthesia machines for the

second quarter of 2017. *Id.* at 3. The PIP informed Phillips that "it is imperative that [he] work in the field uncovering new business, both with and more specifically *without* the sales representatives" and that he "must build significant business on [his] own . . . ." *Id.* at 2 (emphasis in original). In addition, the PIP warned Phillips that if his performance did not improve, "additional corrective action will be taken, which may include termination." *Id.* at 3. Phillips understood that Mindray could discharge him if he did not meet his goals. Docs. 24-3 at 28; 31-1 at 3.

Phillips contends the PIP set him up for failure because selling twenty anesthesia machines in the days remaining in the second quarter "was impossible for any sales manager to accomplish." Doc. 31-1 at 4. *See also* doc. 34-3 at 30. Phillips complained to Lessick about the purported unfairness of the PIP, contending that Lessick was holding Phillips accountable for sales representatives whom Phillips had no control over. Doc. 31-1 at 3-4. In response, Lessick told Phillips that he cannot rely on the sales representatives to generate sales, and that he needed to do more independently to find new business. Doc. 24-3 at 31.

Although Phillips' sales performance improved, he still did not meet his sales goal for the second quarter of 2017. *See* doc. 24-8 at 2. Instead, he sold and shipped only twelve machines. *Id.*[3] After the close of the second quarter, Lessick, Scott

---

[3] In addition to the twelve machines that Phillips sold and shipped in the second quarter, Phillips claims that he booked pending sales of ten additional machines to two entities. Doc. 31-1 at 6. But, the document Phillips cites in support of that contention does not actually support

Dalebout, the Western U.S. Sales Director, and Michelle Thompson, the Human Resources Director, decided to discharge Phillips. Doc. 24-2 at 18. According to Mindray, it made the decision after considering Phillips' sales in 2015, 2016, and the first two quarters of 2017, and Lessick asserts that the "South Central performance related to anesthesia [machine sales] was the worst in the company" for that time period. *Id.* at 20. At discharge, Phillips was the oldest of the eight sales managers in Mindray's perioperative division[4] and the oldest member of the sales team in his region. Docs. 24-3 at 32, 38; 32-1 at 19; 33-1 at 19. Mindray replaced Phillips with an individual twelve to fifteen years younger than Phillips. Doc. 31-1 at 6.

### B.     The Alleged Harassment, Phillips' Complaints, and Retaliation

Shortly after Lessick became his supervisor, Phillips attended a dinner with Lessick and other sales employees and regional managers who were allegedly all younger than Phillips. Docs. 23-3 at 7; 33-1 at 19. At the dinner, a regional manager offered a toast to a Mindray employee who was soon to retire. Doc. 24-3 at 11.

---

Phillips' claim. *See id.* at 6, 20. A Sales Dashboard dated June 16, 2017 reflects that the South Central Region booked the sale of eight anesthesia machines to Jefferson Regional, but it also reflects that eight machines shipped to Jefferson Regional. *Id.* at 20. In addition, the eight machines shipped to Jefferson Regional are included in the twelve machines Phillips received credit for selling. *See* doc. 32-1 at 28-29. And, the Sales Dashboard does not reflect any other sales booked for the South Central Region, or the sale of two machines to the Executive Surgery Center. *Id.*

[4] Seven of the eight sales managers were over the age of forty, and six were over the age of fifty. Docs. 24-3 at 26; 24-5 at 2.

After the toast, Lessick turned to Phillips and asked in front of the group, "so when are you going to retire?" Docs. 24-3 at 11; 33-1 at 19. The question shocked Phillips, who responded that he had no intentions of retiring. Doc. 24-3 at 11. Phillips claims the dinner became awkward, and that after the dinner, other Mindray employees asked Phillips about his retirement plans. Docs. 24-3 at 11; 33-1 at 19. Lessick made another age-related comment to Phillips when he placed Phillips on the PIP, stating, "you're planning on retiring anyway, aren't you, sometime soon?" Doc. 24-3 at 12. And, while Phillips was on the PIP, several sales representatives commented to Phillips, "you're planning on retiring anyway, weren't you?" Doc. 24-3 at 12-13.

In June 2017, Phillips complained to Wayne Quinn, the President of Mindray, about the age-related comments and the unreasonableness of the PIP. Doc. 31-1 at 5, 14. Phillips complained of being "singled out for the lack of effort on behalf of the entire [South Central] Team," and wrote that he felt he was "singled out because of [his] age, especially where Lessick and others have repeatedly asked [him] 'when [he] plan[s] to retire.'" *Id.* at 14. Quinn forwarded Phillips' letter to Lessick, Thompson, and Dalebout, but did not respond to Phillips. *Id.* at 5, 13. Instead, Thompson called Phillips and said she was concerned about the alleged age discrimination, but he did not hear anything further from her about his complaint.

Doc. 24-3 at 37. For its part, Mindray claims that Thompson's investigation found the complaint unsubstantiated. *See* docs. 24-2 at 57; 24-19 at 4.

After Quinn failed to respond, Phillips sent another message to Quinn expressing concern about Lessick's failure to support sales of the anesthesia machines and stating that a successful region requires the Regional Manager "to engage and that is not happening." *Id.* at 17. When Quinn failed again to respond, *id.* at 5, Phillips filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on account of age and disability. Doc. 33-1 at 17. Less than three weeks later, Lessick called Phillips and, "in an angry voice and with significant venom," discharged Phillips by telling him, "you're done." *Id.* at 6. Phillips contends that Lessick offered no reason for the discharge and demanded Phillips return of all of his company property immediately. *Id.* Thereafter, Phillips filed a second charge with the EEOC, alleging Mindray discharged him in retaliation for filing his first charge. *Id.* at 21-23. This action followed.

## III.  ANALYSIS

Phillips asserts claims for age discrimination, hostile work environment, retaliation, negligent and wanton supervision and training, and invasion of privacy. The court addresses the parties' contentions related to these claims in turn.[5]

---

[5] Phillips moves to strike the declarations of Steven Strack, Sid Wammack, and Casey Keith. Doc. 36. Motions to strike summary judgment evidence are no longer appropriate, *see* Fed. R. Civ. P. 56(c)(2) advisory committee's notes (2010 amendments); *Campbell v. Shinseki*, 546 F.

## A.    Age Discrimination Claims

Phillips asserts that Mindray discriminated against him in violation of the ADEA and the Alabama Age Discrimination in Employment Act ("AADEA") when it placed Phillips on a PIP and subsequently discharged him.[6]  Phillips may prove his claims with either direct or circumstantial evidence.  *Kragor v. Takeda Pharma. America, Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (citation omitted).  "'Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of age, constitute direct evidence of discrimination.'"  *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (alterations in original omitted) (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989)).  "An example of direct evidence would be a management memorandum saying, 'Fire Earley—he is too old.'"  *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999) (quoting *Earley*, 907 F.2d at 1082).  In other words, evidence that only suggests discriminatory intent is not direct evidence. *Earley*, 907 F.2d at 1081-82 (citing *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987)).  And, "[d]iscriminatory remarks do not constitute direct evidence

---

App'x 874, 879 (11th Cir. 2013), and the court does not need to consider the declarations to decide the issues presented by Mindray's motion for summary judgment.  Accordingly, Phillips' amended motion to strike, doc. 36, and Mindray's motion for leave to file a response out of time, doc. 40, are moot.

[6] Claims asserted under the ADEA and AADEA have the same elements and standards of proof.  *See Robinson v. Alabama Cent. Credit Union*, 964 So. 2d 1225, 1228-29 (Ala. 2007); *Dooley v. AutoNation USA Corp.*, 218 F. Supp. 2d 1270, 1277 (N.D. Ala. 2002) (citation omitted).

if they were not related to the challenged employment action or were not made by the decision maker." *Ritchie v. Indus. Steel*, 426 Fed. Appx. 867, 871 (11th Cir. 2011) (citing *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)).

Phillips contends that Lessick's comments, i.e., "When are you going to retire?" and that Phillips was "planning on retiring anyway," doc. 30 at 19, are direct evidence of discrimination. But, Phillips has failed to show Lessick's question about Phillips' retirement plans at a dinner in 2016 was related to the decision to place Phillips on a PIP or discharge him in 2017. *See* doc. 24-3 at 11. Thus, although the question may have been insensitive and rude, it is not direct evidence of discrimination. *See Ritchie*, 426 Fed. Appx. at 871. And while Lessick's comment that Phillips was planning on retiring anyway may present a closer question because Lessick made the comment when placing Phillips on a PIP, *see* doc. 24-3 at 12, it is still not such a blatant remark that it can prove discrimination without the need for an inference or presumption. The statement was not related to Phillips' sales performance, which was the subject of the PIP, and Phillips does not dispute the actual sales numbers (only that he was not responsible for the downturn) that prompted his placement on the PIP. Consequently, Phillips has not provided direct evidence of discrimination, and must rely on the burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973),

and *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248 (1981), to prove

his case. *See, e.g., Kragor*, 702 F.3d at 1308.

Under that framework, Phillips bears the initial burden of establishing a prima

facie case. *E.g., Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1217 (11th

Cir. 2019) (en banc); *Kragor*, 702 F.3d at 1308. If Phillips satisfies this burden, the

burden shifts to Mindray to produce a legitimate, non-discriminatory reason for the

challenged action. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th

Cir. 2010) (citation omitted). Then, the burden shifts to Phillips to prove that the

employer's proffered reason is pretext for its actual, discriminatory purposes. *Id.*

### 1.  Phillips' prima facie case of discrimination

Phillips may establish a prima facie of age discrimination case by showing

"'(1) that []he was a member of the protected group of persons between the ages of

forty and seventy; (2) that []he was subject to an adverse employment action; (3) that

a substantially younger person filled the position . . . from which []he was

discharged; and (4) that []he was qualified to do the job for which she was rejected.'"

*Kragor*, 702 F.3d at 1308 (quoting *Damon*, 196 F.3d at 1359). Only the last two

elements are in dispute. *See* doc. 25 at 18-19.

### a.  *Whether Phillips was qualified*

Mindray first argues that Phillips was not qualified for his position due to his

purportedly poor sales performance and his failure to meet his sales goals. Doc. 25

at 18. Meeting sales targets is not synonymous to being qualified. After all, a sales manager can be terrible in her role and yet meet the sales targets based primarily on the efforts of the sales representatives in her region. Relevant here, Mindray does not dispute that Phillips has over thirty years of experience, is an expert in anesthesia machines, helped design the anesthesia machines sold by Mindray, received strong recommendations from coworkers, and that Mindray recognized Phillips' sales ability previously by naming him to the President's Club, which is the most prestigious sales award at Mindray. *See* docs. 24-2 at 72-74; 24-3 at 13, 15, 24, 28; 31-1 at 2, 22-27. Viewed in the light most favorable to Phillips, this evidence, at a minimum, creates a question of fact regarding whether Phillips was qualified for his sales manager position.

> b. *Whether Mindray replaced Gaines with a substantially younger person or treated Phillips differently than similarly-situated employees*

Mindray argues next that Phillips cannot establish that Mindray replaced Phillips with someone outside his protected class or treated similarly-situated employees outside Phillips' protected class more favorably. Doc. 25 at 18. The court agrees with Mindray as to the claim related to the placement of Phillips on the PIP. With respect to this claim, Phillips asserts that Mindray treated similarly-situated younger employees (Kyle Cox, Mike Edwards, Jeff Goethe, Michael Krause, and Kevin Bergin) more favorably by not placing them on a PIP when they

failed to meet their sales goals. Doc. 30 at 14-15, 24. The Eleventh Circuit recently addressed the standard district courts must apply to determine whether a plaintiff and his comparators are, in fact, similarly situated, holding that "a plaintiff must show that []he and [his] comparators are 'similarly situated in all material respects.'" *Lewis*, 918 F.3d at 1224. Courts must apply this standard "on a case-by-case basis, in the context of the individual circumstances" of the case, considering, among other things, whether the plaintiff and comparators "engaged in the same basic conduct (or misconduct) . . . . " *Id.* at 1227-28 (citations omitted). "When making that determination, '[the Eleventh Circuit] require[s] that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decision and confusing apples with oranges.'" *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).

Here, although the alleged comparators also did not meet their sales goals in 2016, each of them sold more anesthesia machines than Phillips. As noted above, Phillips sold only 40 machines in 2016, or 47% of his goal. *See* doc. 24-6 at 2. For their part, Cox sold 52 machines (53% of his goal),[7] Edwards sold 67 (46% of his goal), Goethe sold 101 (70% of his goal), Krause sold 52 (61% of his goal), and Bergin sold 74 (95% of his goal). *Id.* Thus, the only sales managers who sold less

---

[7] Mindray discharged Cox for conduct issues in 2017. Docs. 24-2 at 49; 24-3 at 7.

than half of their sales goal in 2016 were Phillips and Edwards. And, although Edwards only reached 46% of his sales goal in 2016, he showed dramatic improvement in the first quarter of 2017, selling 32 anesthesia machines, which far exceeded his goal of 23 machines. *Id.* On the other hand, Phillips sold only six machines in the first quarter of 2017, or 30% of his goal. *Id.* Based on these sales numbers, Phillips has not shown that the alleged comparators are similarly-situated to him in all material respects. Moreover, the record reflects that Mindray also placed younger sales representatives and managers on PIPs for not meeting their sales goals. *See* doc. 32-1 at 20, 49-50. As a result, Phillips has not established his prima facie case with respect to his placement on a PIP, and Mindray is entitled to summary judgment on this claim.

Next, with respect to the discriminatory discharge claim, contrary to Mindray's contention, the proper analysis is whether Mindray replaced Phillips with a substantially younger individual, not whether Mindray replaced Phillips with an individual outside his protected class. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). The record shows that although, Mindray replaced Phillips with an individual over the age of 50, he was approximately twelve years younger than Phillips. Docs. 24-2 at 13; 31-1 at 6. Based on that age difference, Phillips' replacement qualifies as substantially younger. *See Liebman v. Metropolitan Life Ins. Co.,* 808 F.3d 1294, 1299 (11th Cir. 2015) (finding that a

replacement who was seven years younger than the plaintiff "qualifies as substantially younger"); *Damon*, 196 F.3d at 1360 (finding that a replacement who was five years younger than the plaintiff was "substantially younger"). Thus, Phillips can establish a prima facie case of discriminatory discharge.

## 2. Mindray's Proffered Reason and Pretext

Mindray also argues that Phillips cannot show that its reasons for the discharge, i.e., Phillips' poor performance and failure to meet the PIP sales goals, are pretextual. Doc. 18 at 19-26. Because Phillips' alleged performance issues are legitimate, non-discriminatory reasons, to survive summary judgment, Phillips must raise a question of material fact regarding if Mindray's proffered reasons are pretext for discriminatory intent. *See Chapman v. A1 Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (en banc); *Damon*, 196 F.3d at 1361. Phillips can show pretext "directly, by persuading the court that a discriminatory reason more likely than not motivated [Mindray], or indirectly, by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Mindray's] proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence.'" *Paschal v. United Parcel Serv.*, 573 F. App'x. 823, 825 (11th Cir. 2014) (quoting *Alvarez*, 610 F.3d at 1265). "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show

intentional discrimination." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993).

Turning to the specifics here, Mindray asserts that Lessick, Thompson, and Dalebout made the decision to discharge Phillips because his sales numbers for the South Central Region were the lowest in the company for the period from 2015 through the second quarter of 2017. Phillips argues these reasons are pretextual because (1) Lessick manipulated the sales data by using the wrong metrics to make it appear that Phillips had poor sales figures; (2) Lessick set Phillips up for failure by placing him on an unreasonable PIP with unattainable goals, (3) Mindray did not terminate younger sales managers who did not meet their sales goals, and (4) Lessick questioned when Phillips planned to retire. Doc. 30 at 7-8, 21-25. The court addresses these contentions in turn.

a.     *alleged use of the wrong metrics*

Phillips does not dispute Mindray's evidence that he had the lowest sales numbers of any sales manager for the period from 2015 through the first quarter of 2017, and sold only eighty-nine anesthesia machines during that time. Doc. 24-3 at 50. Instead, Phillips quibbles that Lessick did not consider Phillips' sales history for a full three-year period before placing Phillips on a PIP. Doc. 30 at 7. According to Phillips, Lessick "manipulated Phillips' sales numbers when he placed Phillips on the PIP by selecting a time frame that made it appear that Phillips had poor sales

results," and Phillips maintains that his region did not have the worst sales numbers for the period from 2014 through 2016. *Id.* at 7-8. Phillips contends instead that during that period, the South Central Region sold 158 anesthesia machines, including seventy-five in 2014, while the Southeast and Midwest Regions sold fewer machines. *See* docs. 30 at 7; 32-1 at 3, 25. Phillips' reliance on 2014 sales misses the mark because Phillips did not transfer to the South Central Region until 2015. Doc. 24-3 at 24. Thus, the number of machines the South Central Region sold in 2014 has no bearing on Phillips' sales performance as the Region's sales manager.[8]

b. *alleged unreasonable PIP with unattainable goals*

Phillips argues also that the purported unreasonable nature of the PIP is evidence of pretext. *See* doc. 30 at 8, 24-25. As noted, the PIP required Phillips to meet a goal of selling twenty machines in the second quarter of 2017. Doc. 24-3 at 30. But, because Lessick gave Phillips the PIP approximately three weeks in to the quarter, Phillips contends he had only forty-nine days[9] to meet his sales goal. Doc. 30 at 8, 24. Phillips asserts that it is virtually impossible for any sales manager to sell twenty anesthesia machines in forty-nine days. *See id.* This contention is unavailing because Mindray had set the twenty sales per quarter goal as far back as

---

[8] Phillips was sales manager in the Mid-Atlantic Region in 2014 and sold only forty-six machines that year. *See* docs. 24-3 at 21; 32-1 at 3.

[9] It is not clear how Phillips calculated this number because more than forty-nine days were left in the second quarter when Phillips received his PIP. Indeed, there are sixty-seven days between April 24 and June 30.

2016, doc. 32-1 at 2, and set the same quarterly sales goals for 2017 before it placed Phillips on a PIP. *See* doc. 24-7 at 2. In fact, Phillips does not dispute that his sales goes did not change drastically from year to year, *see* doc. 24-2 at 32, or that he once again missed his quarterly targets in the first quarter of 2017, docs. 24-3 at 26; 24-6 at 2. Given that the PIP set the same quarterly targets, and thus Phillips knew at the start of the quarter he had to sell twenty machines, Phillips' contention that Mindray set an untenable goals by purportedly giving him only forty-nine days to meet his second quarter sales goals rings hollow.

Phillips also contends that the PIP was unreasonable because it held him accountable for sales representatives he had no authority over or ability to control. Doc. 30 at 9, 25. As Phillips puts it, Lessick set him up for failure by placing him on the PIP because Lessick, who supervised the sales representatives, encouraged them to sell only patient monitoring machines and not anesthesia machines. Docs. 24-3 at 11, 51; 30 at 9; 31-1 at 4-5. And, Phillips, citing Gregory Oswalt's PIP, contends that Mindray did not hold other sales managers responsible for the performance of sales representatives in their regions. Doc. 30 at 16. Oswalt, the former sales manager for another region, is five years younger than Phillips, which qualifies as substantially younger for purposes of the ADEA. Doc. 24-3 at 32. *See also Damon*, 196 F.3d at 1360. Mindray placed Oswalt on a PIP in April 2016 based on his sales performance. Doc. 32-1 at 20. Phillips asserts that the PIP did not hold

Oswalt accountable for the performance of sales representatives in his region and "merely required that [Oswalt] 'strategically coach' the sales representatives." Doc. 30 at 16. This contention is belied by Oswalt's PIP, which like Phillips', required Oswalt to meet the sales goal for his region for the first two quarters of 2016. Doc. 32-1 at 20. Thus, Lessick's decision to place Phillips on a PIP requiring him to meet his sales goal for the second quarter of 2017 does not show pretext.

c. *alleged failure to discharge younger sales managers*

Phillips also contends that Mindray did not discharge younger sales managers for failing to meet their sales goals. Doc. 30 at 16, 24. As mentioned above, Mindray placed Oswalt on a PIP in April 2016, and Oswalt's PIP required him to meet his sales goals for the first two quarters of the year by selling forty-four machines by the end of the second quarter. Doc. 32-1 at 20. But, Mindray's sales figures reflect that Oswalt's region sold only three anesthesia machines in the second quarter of 2016 for a total of nineteen machines in the first two quarters, or 43% of Oswalt's sales goal. *Id.* at 2. However, Mindray did not discharge Oswalt and instead gave him additional time to meet his sales goal.[10] In addition, unlike Phillips, Mindray ultimately demoted Oswalt to a different position instead of discharging him. Doc.

---

[10] As Mindray notes, by the end of 2016, Oswalt's region sold ninety anesthesia machines, which is above its sales goal for the year. *See* doc. 32-1 at 2. But, Mindray does not point to anything in the record to show that any of the sales Oswalt made in the last two quarters of 2016 were pending before the end of the second quarter, or to otherwise explain why it gave Oswalt additional time to meet his sales goal for the year.

24-3 at 29.  This evidence that Mindray treated Oswalt, who is substantially younger, more favorably than Phillips is "[e]specially relevant to . . . a showing" of pretext. *McDonnell Douglas*, 411 U.S. at 804.

        d.     *alleged age animus via retirement comments*

Phillips also argues that Lessick's comments regarding Phillips' retirement plans show pretext.  Doc. 30 at 21-23.  As discussed above, Phillips asserts that Lessick asked him when he planned to retire at a dinner with younger colleagues, and Lessick commented that Phillips was planning to retire anyway when he placed Phillips on the PIP.  *See* pp. 8, 11, *supra*.  Although these comments do "not rise to the level of direct evidence of discrimination, and would not be enough standing alone to show a discriminatory motive, a jury could infer from [them] some age-bias on [Lessick's] part when [these] comment[s] [are] coupled with other evidence in the case."  *Beaver v. Rayonier, Inc.*, 200 F.3d 723, 730 (11th Cir. 1999) (citing *Burrell v. Bd. of Trustees of Ga. Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997)).  And, a supervisor's unsolicited comments and questions about an employee's retirement plans could indicate the supervisor "intended to discriminate on the basis of retirement age . . . ."  *Alsobrook v. Fannin Cty., Ga.*, 698 F. App'x 1010, 1013 (11th Cir. 2017).

Thus, Lessick's alleged comments about Phillips' retirement plans, coupled with the evidence that Mindray treated Oswalt more favorably, are sufficient to raise

a question of fact regarding whether Mindray's reason for discharging Phillips is pretextual. Consequently, the motion on the discriminatory discharge claim fails.

### B. **Hostile Work Environment Claim**

Phillips asserts that Mindray subjected him to a hostile work environment in violation of the ADEA and AADEA. To establish his claims, Phillips must prove, in part, that Mindray subjected him to unwelcome harassment, the harassment was based on his age, and that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006). *See also Coles v. Post Mater Gen. United States Postal Serv.*, 711 F. App'x 890, 898 (11th Cir. 2017) (assuming without deciding that cases decided under Title VII apply to hostile work environment claims asserted under the ADEA). Additionally, it is a "bedrock principle that not all objectionable conduct or language amounts to discrimination under [the anti-discrimination laws]." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012) (quotation omitted). Rather, "only conduct that is 'based on' a protected category, such as race [or age], may be considered in a hostile work environment analysis." *Id.*

The alleged hostile work environment here consists of Mindray marginalizing Phillips, placing him on an unreasonable PIP, ignoring his complaints of discrimination, and "offensive age-based comments . . . ." Doc. 30 at 26. *See also*

doc. 1 at 11-16. To begin, Phillips testified that he was marginalized because Mindray focused on sales of patient monitoring devices over anesthesia machines. Doc. 24-3 at 11. But, Phillips concedes that Mindray had a similar focus in other regions with younger anesthesia sales managers, and Phillips has not produced any evidence to suggest that the focus was based on his age. *See* doc. 24-3 at 18, 32, 35. As for the PIP, as discussed above, Phillips' PIP was similar to PIPs given to younger sales managers who did not meet sales goals, and Phillips has not shown that age factored in the decision to place him on a PIP. As a result, the court cannot consider the PIP and Phillips' testimony that Mindray marginalized him in its analysis of the hostile work environment claim. *See Jones*, 683 F.3d at 1297.

Next, to determine if the alleged age-based comments and Mindray's alleged failure to respond to Phillips' complaints was sufficiently severe or pervasive to alter the terms of Phillips' employment, the "court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (internal quotations omitted). As Mindray points out, Phillips has not offered any evidence that the alleged comments by Lessick and his coworkers interfered with his work, doc. 25 at 26, and Phillips also has not shown that Quinn's failure to respond to his complaints interfered with

his work.  In addition, none of the alleged conduct is threatening or humiliating, and two comments from a supervisor and sporadic comments from coworkers about retirement plans do not rise to the necessary severity or pervasiveness required for a hostile work environment claim.  Consequently, Mindray is entitled to summary judgment on the claim.

### C.  Retaliation Claims

Phillips asserts retaliation claims based on his allegations that Mindray discharged him after he complained of age discrimination.  To prevail on his retaliation claims, Phillips must first establish a prima facie case by showing "that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Butler v. Alabama Dep't of Transp.*, 536 F.3d 1209, 1213 (11th Cir. 2008) (quotation omitted).  "The causal link element is construed broadly so that '[Phillips] merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (quotation omitted).  Phillips may prove this by showing close temporal proximity between his protected activity and the adverse actions. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citation omitted). If he establishes a prima facie case, the burden shifts to Mindray to articulate a legitimate, non-retaliatory reason for its actions.  Then, as with a discrimination claim, the burden

shifts back to Phillips to show the proffered reason is pretext for the Mindray's actual retaliatory intent. *See Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999).

Mindray contends that the retaliation claim fails because Phillips cannot show a causal connection between his protected conduct and the adverse action. Doc. 25 at 29. The record shows, however, that Phillips complained to Quinn that he thought Lessick singled him out based on his age and then filed an EEOC charge ten days later. Docs. 31-1 at 14; 33-1 at 17. And, four weeks after Phillips' internal complaint, which Quinn forwarded to Lessick, and less than three weeks after Phillips filed his EEOC charge, Mindray discharged Phillips. Even accepting Mindray's contention that it only received the EEOC charge after it discharged Phillips, *see* doc. 24-19 at 5, a fact that Phillips failed to rebut, the close temporal proximity between Phillips' complaint of age discrimination to Quinn and his discharge is sufficient to suggest causation. *See Thomas*, 506 F.3d at 1364. Moreover, although Mindray had placed Phillips on a PIP before his protected activity, it has not produced any evidence that it decided to discharge Phillips before he engaged in protected activity. Thus, Phillips has established his prima facie case of retaliation.

Mindray also argues that Phillips cannot show that its reason for the discharge is pretext for retaliatory intent. Doc. 25 at 29. But, as discussed above, Mindray did

not discharge a younger sales manager who presumably had not engaged in protected activity for failing to meet his sales goals or the requirements of his PIP. *See* pp. 20-21, *supra*. In addition, Phillips attests that Lessick discharged him by simply stating "in an angry tone and with significant venom, 'You're done.'" Doc. 31-1 at 6. Viewed in the light most favorable to Phillips, which the court must at this juncture, this testimony, coupled with Mindray's more favorable treatment of another sales manager and the close temporal relationship between Phillips' protected activity and discharge, creates a question of fact regarding pretext. Therefore, Mindray's motion on the retaliation claims fails.

### C.   <u>State Law Claims</u>

Phillips is now only pursuing claims under Alabama state law for invasion of privacy and negligent or wanton supervision and training. Doc. 1.[11] Mindray argues correctly that Phillips failed to establish essential elements of the claims.

### 1.   <u>Invasion of Privacy</u>

Phillips can establish an invasion of privacy claim by showing "'the wrongful intrusion into [his] private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.'" *Stancombe*

---

[11] Phillips voluntarily dismissed his claims for intentional infliction of emotional distress and interference with contractual or business relations in lieu of responding to Mindray's arguments for summary judgment. Doc. 30 at 28, n.8. Because Phillips has abandoned these claims, they are due to be dismissed with prejudice. *See Resolution Trust Corp*, 43 F.3d at 599.

*v. New Process Steel, LP*, 652 F. App'x 729, 738 (11th Cir. 2016) (quoting *McIsaac*

*v. WZEW-FM Corp.*, 495 So. 2d 649, 651 (Ala. 1986)). This "has been defined as

the 'intentional interference with another's interest in solitude or seclusion, either as

to his person or to his private affairs or concerns,'" and requires the plaintiff to show

"an offensive or objectionable prying or intrusion . . . ." *Busby v. Truswal Sys. Corp.*,

551 So. 2d 322, 323-24 (Ala. 1989) (quotations omitted).

In this case, Phillips contends that Lessick invaded his privacy by inquiring

into Phillips' retirement plans and informing Phillips' coworkers about the PIP.

Doc. 30 at 31. But, asking about an employee's retirement plans, even in front of a

group, would not cause outrage, humiliation, or shame to a person of ordinary

sensibilities. And, Phillips did not cite any authority suggesting that informing co-

workers about another employee's allegedly poor work performance or an

improvement plan could be considered an intrusion into a plaintiff's private

concerns, and the court is aware of no such authority. As a result, Mindray is entitled

to summary judgment on the invasion of privacy claim.

2.     Negligent and Wanton Supervision and Training

"To establish a negligent or wanton supervision and training claim, [Phillips]

must show that (1) the employee committed a tort recognized under Alabama law;

(2) [Mindray] knew or should have known of the tortious act; and (3) [Mindray]

negligently or wantonly disregarded the employee's incompetence." *Vinson v. Koch*

*Foods of Alabama, LLC*, 2013 WL 5441969, at *8 (M.D. Ala. Sept. 27, 2013) (citing *Armstrong Business Servs., Inc. v AmSouth Bank*, 817 So. 2d 665, 683 (Ala. 2001); *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999)).  Thus, "[i]t is not sufficient merely to allege, or to show, that the employee acted incompetently. [Phillips] must establish 'by affirmative proof' that [Mindray] actually knew of the incompetence, or that [Mindray] reasonably should have known of it."  *Armstrong Business Serv., Inc.*, 817 So. 2d at 683 (citations omitted).

Phillips argues that Mindray was negligent or wanton in its supervision and training of Lessick, Quinn, and Dalebout because it knew, or should have known, that these supervisors were engaging in age-based harassment and discrimination. Doc. 30 at 29.  As Phillips puts it, he "can prove that [Mindray] committed tortious behavior by violating the ADEA" and proof of the violation "is sufficient to establish the underlying tort necessary to support Phillips's negligent and wanton supervision and training claim."  Doc. 30 at 30.  However, even if Phillips can establish an underlying tort, that is not sufficient to establish his negligent and wanton supervision claim.  Phillips must also show that Mindray knew or should have known of an employee's tortious conduct and negligently or wantonly disregarded the conduct.  *See Armstrong*, 817 So. 2d at 683.

Before addressing those elements of Phillips' claims, the court first notes that Phillips has not shown that Quinn and Dalebout engaged in any age-based

harassment and discrimination, much less that Mindray should have known about any tortious conduct by those two individuals. As a result, Phillips cannot show that Mindray negligently or wantonly supervised or trained Quinn and Dalebout. As for Lessick, in June 2016, Phillips informed Quinn and Mindray that Lessick and others repeatedly questioned Phillips about when he planned to retire. Doc. 32-1 at 17. Those questions by themselves do not amount to tortious behavior, *see* p. 11, *supra*, and Phillips has not shown that Mindray had knowledge of any other allegedly tortious conduct by Lessick prior to Phillips' discharge. In addition, Quinn forwarded Phillips' complaint to Lessick and Thompson, and Thompson asked Lessick and other employees at the dinner about the alleged questions regarding Phillips' retirement. Doc. 24-19 at 4. According to Mindray, none of the individuals at the dinner corroborated Phillips' contention about the retirement questions. *Id.* Based on this record, Phillips has not shown that Mindray knew or should have known about tortious conduct by Lessick and disregarded the conduct. Therefore, the negligent or wanton supervision and training claim fails.

## IV.   CONCLUSION

For the reasons discussed above, Phillips' motion to strike, doc. 36, and Mindray's motion for leave to file a response out of time, doc. 40, are due to be denied as moot. Mindray's motion for summary judgment, doc. 23, is due to be denied as to the claims asserted under the ADEA and AADEA for discriminatory

discharge and retaliation, but is due to be granted in all other respects. A separate order will be entered.

**DONE** the 13th day of September, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE